# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Rachel H. Scarpato

**DEFENDANTS**

Dentsply Sirona, Inc.

**(b)** County of Residence of First Listed Plaintiff  York County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Mecklenburg County, NC
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Justin Tomevi, Barley Snyder, 100 East Market Street, York, PA 17401, 717-843-8888

Attorneys *(If Known)*

Christopher Tinari, Margolis Edelstein, 170 S. Independence Mall W., Suite 400E, Philadelphia, PA 19106, 215-931-5808

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
      Proceeding

☒ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
This Court has jurisdiction pursuant to 28 U.S.C. 1332.

Brief description of cause:
Plaintiff alleges breach of stock grant agreement and a violation of the PA Wage Payment and Collection Law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
75,000.01

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
07/16/2020

SIGNATURE OF ATTORNEY OF R _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RACHEL H. SCARPATO,                    )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )    Case No.:
                                       )
DENTSPLY SIRONA, INC.,                 )
                                       )
                    Defendant.         )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and (b), and 1446, Defendant Dentsply Sirona, Inc. ("Dentsply") invokes this Court's jurisdiction and removes the above-entitled case from the Court of Common Pleas of York County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania.  In support of this Notice of Removal, Dentsply states as follows:

1.      On July 24, 2020, Plaintiff commenced a civil action denominated as *Rachel H. Scarpato v. Dentsply Sirona, Inc.*, Case No. 2020-SU-001371, in the Court of Common Pleas of York County, Pennsylvania.

2.      The Court of Common Pleas of York County, Pennsylvania issued a Notice to Defend on June 24, 2020.  Plaintiff then served a copy of the Notice to Defend and Complaint on Dentsply on June 25, 2020.  As required by 28 U.S.C. §1446(b), copies of the Notice to Defend, Complaint, and other related court documents served upon Dentsply, which constitute all the process, pleadings, and orders in this case to date, are attached as Exhibit A.  The Complaint is included at pages 2 through 18 of Exhibit A and will be referred to throughout as the "Complaint."

1

3. In the Complaint, Plaintiff alleges two causes of action against Dentsply: (1) breach of contract; and (2) violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). Exhibit A, Complaint at ¶¶ 32-47.

4. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because less than thirty (30) days have elapsed since the service date of the initial pleading on Dentsply and it is less than one year after commencement of this action.

5. The United States District Court for the Middle District of Pennsylvania is the appropriate venue for removal of Plaintiff's state court action pursuant to 28 U.S.C. § 1441, which permits any civil action brought in any state court in which the District Courts of the United States have original jurisdiction to be removed to the District Court of the United States for the district and division embracing the place where the state court action is pending.

6. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, and the action is removable pursuant to 28 U.S.C. § 1441, because there is complete diversity of citizenship between Plaintiff and Dentsply and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

7. Upon information and belief, Plaintiff is an individual residing in the State of Pennsylvania and is therefore a citizen of Pennsylvania for purposes of 28 U.S.C. §§ 1332 and 1441. See Exhibit A, Complaint at ¶ 1.

8. For purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and where its principal place of business is located. 28 U.S.C. § 1332(c).

9. A corporation's principal place of business is determined by the "nerve center" test, which looks to where the corporation maintains its corporate headquarters and where the

2

corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 90-94 (2010).

10.    Dentsply is a corporation incorporated in the State of Delaware. *See* <u>Exhibit B</u>, Declaration of Syed Rehan Ashraf ("Ashraf Decl.") at ¶ 4.

11.    Dentsply's home office is in Charlotte, North Carolina, where its high-level officers direct, control, and coordinate Dentsply's activities. *See* <u>Exhibit B</u>, Ashraf Decl. at ¶ 5.

12.    As a result, Dentsply is a citizen of Delaware and North Carolina for purposes of 28 U.S.C. §§ 1332 and § 1441.

13.    Because Plaintiff is a citizen of Pennsylvania and Dentsply is a citizen of Delaware and North Carolina, there is complete diversity of citizenship between Plaintiff and Dentsply for purposes of 28 U.S.C. § 1332(a)(1).

## AMOUNT IN CONTROVERSY

14.    Section 1332(a) requires that the amount in controversy in diversity actions exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). To demonstrate that the jurisdictional amount has been met, a removing party need only show that it is more likely than not that the amount in controversy exceeds $75,000. 28 U.S.C. § 1446(c)(2)(B) ("[R]emoval of the action is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000].").

15.    The amount in controversy is measured by a reasonable reading of the value of the rights being litigated as set forth in the plaintiff's complaint. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002).

3

16.     While Dentsply denies Plaintiff's factual allegations and denies Plaintiff is entitled to any of the relief sought, Plaintiff has put into controversy an amount that is more likely than not in excess of $75,000, exclusive of interest and costs.[1]

17.     In the Complaint Plaintiff does not request a specific amount in damages, but alleges that her damages exceed $50,000 and seeks damages in an "amount equal to the value of the Restricted Share Unit payout, plus interest, costs, and such other relief as this Court deems proper" for each count, plus 25% liquidated damages, and attorneys' fees, for Count II. *See* Exhibit A, Complaint at ¶¶ 32-39 (WHEREFORE clause for Count I); and 40-47 (WHEREFORE clause for Count II).  Accordingly, the Complaint purports to place at least $75,000 in controversy.

**Damages Alleged in Count I**

18.     In Count I of the Complaint, which alleges breach of contract, Plaintiff alleges that she has suffered damages equal to the value of the Restricted Share Unit Award, plus pre-judgment interest as a result of Dentsply's breach of the Grant Agreement. *See* Exhibit A, Complaint at ¶ 38.

19.     Plaintiff alleges that Dentsply breached the Grant Agreement when it declined to pay her a Restricted Share Unit Award and that her damages exceed $50,000.  *See* Exhibit A, Complaint at ¶¶ 37, 39.

20.     Thus, the total amount in controversy for Count I is at least $50,000.

**Damages Alleged in Count II**

21.     In Count II, which alleges a violation of the WPCL, Plaintiff alleges that she is entitled to liquidated damages in an amount equal to 25% of the total wages that remain due to

---

[1] This Notice of Removal discusses the nature and amount of the damages placed at issue in the Complaint.  Dentsply's references to specific damage amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of $75,000. Dentsply maintains that each of Plaintiff's claims is without merit, Plaintiff is not entitled to the Restricted Share Unit Award, and Dentsply is not liable to Plaintiff.

4

her, which wages include the Restricted Share Unit Award.  *See* <u>Exhibit A</u>, Complaint at ¶¶ 44, 46.

22.     Plaintiff alleges that Dentsply violated the WPCL by declining to pay the Restricted Share Unit Award to her.  *See* <u>Exhibit A</u>, Complaint at ¶¶ 41-47.

23.     Assuming Plaintiff seeks to recover damages in excess of $50,000 for the alleged unpaid Restricted Share Unit Award, the alleged liquidated damages to which Plaintiff claims she would be entitled for Dentsply's alleged violation of the WPCL would be at least $12,500.

24.     Plaintiff also seeks attorneys' fees under the WPCL.  *See* <u>Exhibit A</u>, Complaint at ¶ 47.

25.     "[I]n calculating the amount in controversy, [courts] must consider potential attorney's fees."  *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 472, 476 (E.D. Pa. 2013) (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir.1997)); *see also Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1993) (potential attorneys' fees should be considered in determining whether the amount in controversy in a diversity action exceeds the jurisdictional threshold).

26.     Courts have upheld significant attorneys' fees awards in cases under the WPCL. *See, e.g.*, *Ambrose v. Citizens Nat'l Bank of Evans City*, 5 A.3d 413 (Pa. 2010) (affirming attorneys' fee award of $152,049 on WPCL claim where employee recovered $72,105).

27.     Here, the Court should consider at least $25,000 in attorneys' fees for purposes of determining the amount in controversy for establishing jurisdiction.

28.     Thus, the total amount in controversy for Count II is at least $37,500.

**Total Amount in Controversy**

29.     In sum, Plaintiff's claims for damages place at least $87,500 in controversy and therefore satisfy the statutory amount in controversy of $75,000 for diversity jurisdiction.

**CONCLUSION**

30.     The parties are completely diverse and Plaintiff's claims place more than $75,000 in controversy.  For those reasons, this case is properly removed to this Court under 28 U.S.C. §§ 1332(a) and 1441.

31.     In the event this Court has a question regarding the propriety of this Notice of Removal, Dentsply requests that the Court issue an Order to Show Cause so that Dentsply may have an opportunity to more fully brief the Court on the basis for this removal.

32.     Dentsply reserves the right to amend or supplement this Notice of Removal.

33.     By filing this Notice of Removal, Dentsply does not waive any defenses that may be available.

34.     Upon filing this Notice of Removal, Dentsply will provide written notice to Plaintiff and file a copy of this Notice of Removal with the Clerk of the Court of Common Pleas of York County, Pennsylvania.

Respectfully submitted,

MARGOLIS EDELSTEIN

BY:_____

CHRISTOPHER A. TINARI
Attorney No. 74277
The Curtis Center – Suite 400E
170 S. Independence Mall W.
Philadelphia, PA 19106-3337
Phone: 215-931-5895
Fax: 215-922-1772

6

HB: 4846-6409-2866.2

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies the foregoing was filed via the Court's CM/ECF System on this 16th day of July, 2020, and served via U.S. Mail upon:

Justin Tomevi
Barley Snyder
100 East Market Street
York, PA 17401
Telephone: (717) 846-8888
*Attorneys for Plaintiff*

MARGOLIS EDELSTEIN

BY:_____
CHRISTOPHER A. TINARI
Attorney No. 74277
The Curtis Center – Suite 400E
170 S. Independence Mall W.
Philadelphia, PA 19106-3337
Phone: 215-931-5895
Fax: 215-922-1772

7

HB: 4846-6409-2866.2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RACHEL H. SCARPATO,                )
                Plaintiff,          )
                         )
v.                                 )    Case No.:
                         )
DENTSPLY SIRONA, INC.,             )
                Defendant.         )

## NOTICE TO PLAINTIFF

TO:    Justin Tomevi
         Barley Snyder
         100 East Market Street
         York, PA 17401

PLEASE TAKE NOTICE that Defendant Dentsply Sirona, Inc. has filed a Notice of Removal in the United States District Court for the Middle District of Pennsylvania for removal of an action now pending in the Court of Common Pleas of York County, Pennsylvania, entitled *Rachel H. Scarpato v. Dentsply Sirona, Inc.*, Case No. 2020-SU-001371.

FURTHER TAKE NOTICE that Defendant has at the same time filed with the United States District Court for the Middle District of Pennsylvania a copy of the state court file in this case.

A copy of the Notice of Removal is being mailed to you with this Notice to Plaintiff and is thus served upon you.

MARGOLIS EDELSTEIN

BY:_____
         CHRISTOPHER A. TINARI
         Attorney No. 74277
         The Curtis Center – Suite 400E
         170 S. Independence Mall W.
         Philadelphia, PA 19106-3337
         Phone: 215-931-5895
         Fax: 215-922-1772

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies the foregoing was filed via the Court's CM/ECF System on this 16th day of July, 2020, and served via U.S. Mail upon:

Justin Tomevi
Barley Snyder
100 East Market Street
York, PA 17401
Telephone: (717) 846-8888
*Attorneys for Plaintiff*

MARGOLIS EDELSTEIN

BY:_____
       CHRISTOPHER A. TINARI
       Attorney No. 74277
       The Curtis Center – Suite 400E
       170 S. Independence Mall W.
       Philadelphia, PA 19106-3337
       Phone: 215-931-5895
       Fax: 215-922-1772

2

HB: 4818-0497-6834.1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL H. SCARPATO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| DENTSPLY SIRONA, INC., | ) |
| | ) |
| Defendant. | ) |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Defendant Dentsply Sirona,

Inc. ("Dentsply") makes the following disclosure:

Dentsply has no parent corporation, and no publicly-held corporation owns more than 10%

of Dentsply Sirona, Inc.'s stock.

Dentsply will promptly file a supplemental statement upon any change in the information

provided herein.

DATED:  July 16, 2020                    Respectfully submitted,

                                         MARGOLIS EDELSTEIN

                                         By: /s/ Christopher Tinari
                                             Christopher Tinari
                                             Attorney No. 74277
                                             The Curtis Center
                                             170 S. Independence Mall W., Suite 400E
                                             Philadelphia, PA 19106-3337
                                             Phone: 215-931-5808
                                             Fax: 215-922-1772

                                             *Attorneys for Defendant*

1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies the foregoing was filed via the Court's CM/ECF System on this 15th day of July, 2020, and served via U.S. Mail upon:

Justin Tomevi
Barley Snyder
100 East Market Street
York, PA 17401
Telephone: (717) 846-8888
*Attorneys for Plaintiff*

/s/ *Christopher Tinari*

2

HB: 4834-7280-2754.1



RECEIVED

JUN 2 5 2020

DENTSPLY SIRONA LEGAL DEPT.

| | |
|---|---|
| RACHEL H. SCARPATO,<br>1109 Smallbrook Lane,<br>York, PA 17403<br>         *Plaintiff,*<br><br>         v.<br><br>DENTSPLY SIRONA, INC.<br>221 W. Philadelphia St.,<br>York, PA 17401<br>         *Defendant.* | COURT OF COMMON PLEAS OF<br>YORK COUNTY, PENNSYLVANIA<br><br>CIVIL ACTION – LAW<br><br>Wed, Jun 24, 2020 11:17 AM<br>2020-SU-001371 |

## NOTICE TO DEFEND

TO:    Dentsply Sirona, Inc.

      You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing, in writing with the Court, your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claims or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

    LAWYER REFERRAL SERVICE OF THE YORK COUNTY BAR ASSOCIATION
        YORK COUNTY BAR CENTER - 717-854-8755
         137 EAST MARKET STREET, YORK PA 1740

7876412.1

**EXHIBIT A**

| | |
|---|---|
| RACHEL H. SCARPATO,<br><br>*Plaintiff,*<br><br>v.<br><br>DENTSPLY SIRONA, INC.,<br><br>*Defendant.* | COURT OF COMMON PLEAS OF<br>YORK  COUNTY, PENNSYLVANIA<br><br>CIVIL ACTION – LAW<br><br>Wed, Jun 24, 2020 11:17 AM<br><br>2020-SU-001371 |



## COMPLAINT

NOW COMES Plaintiff Rachel H. Scarpato, by and though her undersigned counsel and

avers as follows:

### THE PARTIES AND JURISDICTION

1.      Plaintiff Rachel H. Scarpato is an adult individual residing at 1109 Smallbrook

Lane, York, PA 17403.

2.      Defendant Dentsply Sirona, Inc. ("Dentsply Sirona") is a North Carolina

Corporation with a place of business in York County, Pennsylvania.

3.      Dentsply Sirona conducts substantial business in York County, Pennsylvania.

4.      This matter arises out of Dentsply Sirona's York County conduct and a contract

entered into and breached in York County, Pennsylvania.

5.      Jurisdiction and venue are proper in this Court.

### FACTUAL BACKGROUND

6.      Plaintiff Scarpato is the former vice president of financial planning analysis for

Defendant Dentsply Sirona.

7876412.1

**EXHIBIT A**

7.      On or about November 13, 2018, as a part of her compensation with Dentsply Sirona, Scarpato was offered a Performance Restricted Share Unit Grant Agreement (the "Grant Agreement"). A true and correct copy of the Grant Agreement is attached hereto as <u>Exhibit A</u>.

8.      Pursuant to the Grant Agreement, under certain conditions, Scarpato was entitled to receive a payout related to a certain number of Restricted Share Units of Dentsply Sirona. *Id.*

9.      Specifically, under the Grant Agreement, if Dentsply Sirona attained certain vesting conditions, Scarpato would be entitled to receive a payout for Restricted Share Units. *Id.*

10.     The payout level for Restricted Share Units Scarpato would receive was tied to the operating margin target that Dentsply Sirona achieved during the preceding four-quarter period.

11.     The Grant Agreement defined "Vesting Conditions" to be: "(1) during any four consecutive quarters of the Measurement Period (each such set of quarters, the "<u>Four Quarters</u>"), the Operating Margin of the Company achieves the targets below:

| Operating Margin Targets | 18.0% | 19.0% | 20.0% | 21.0% | 22.0% | 23.0% |
|---|---|---|---|---|---|---|
| Payout Level | 50% | 100% | 150% | 200% | 250% | 300% |

and (2) such improvements of the Operating Margin, as measured at the end of the quarter immediately following such Four Quarters (even if such subsequent quarters is the quester immediately following the Measurement Period) and calculated for the trailing four quarters, is also above the applicable target set forth in the table above..." <u>Exhibit A</u>.

12.     Accordingly, in order to achieve all Vesting Conditions, Dentsply Sirona would be required to achieve an Operating Margin Target for four consecutive quarters, which would be confirmed at the end of the fifth consecutive quarter.

7876412.1

**EXHIBIT A**

13.     Following these "Vesting Conditions" the shares would cliff vest "immediately upon the certification by the Human Resources Committee that such Vesting Conditions have been met." *Id.*

14.     Under certain conditions, Scarpato could forfeit her Restricted Share Unit payout.

15.     Specifically, if Scarpato's employment with Dentsply Sirona terminated, she would not be entitled to the payout that had not yet vested. Exhibit A at Exhibit A(2)(c).

16.     The parties expressly agreed, "[f]or the avoidance of doubt, except as provided in the Grant Notice, this RSU Agreement, or the Plan, if the Vesting Conditions are not achieved, [Scarpato] shall forfeit all rights with respect to the Award…at the end of the Measurement Period to the extent such Vesting Conditions were not achieved, if not sooner terminated and forfeited hereunder on account of termination of employment or otherwise" *Id.*

17.     Scarpato was employed with Dentsply Sirona during the four quarters from January 2019 through December 2019 and through the first quarter of 2020.

18.     During that time, Dentsply Sirona achieved its Operating Margin Targets at 18%.

19.     At the end of the first quarter of 2020, the Operating Margin Targets were measured and confirmed the 18% Operating Margin Targets.

20.     Accordingly, all Vesting Conditions were satisfied for Scarpato to receive a payout level of 50% as of March 30, 2020.

21.     On April 1, 2020, Scarpato submitted her resignation with Dentsply Sirona.

22.     She continued to be employed with Dentsply Sirona for two more weeks.

23.     Afterward, she accepted a new position with a different company.

24.     [1]The Human Resources Committee did not "certify" that the Vesting Conditions were satisfied until several days after Scarpato's employment ended.

**EXHIBIT A**

25.     Q1 2020 financial results were not published and submitted to the SEC until several days after Scarpato's employment ended.

26.     Dentsply Sirona has now refused to provide Scarpato with her Restricted Share Unit payout she was entitled to pursuant to the Grant Agreement.

27.     Instead, Dentsply Sirona has taken the position that even though all Vesting Conditions were satisfied, the Restricted Share Unit payout was forfeited by Scarpato resigning from her employment prior to the Human Resources Committee certifying that the Vesting Conditions were satisfied and the Q1 2020 financial results were published with the SEC.

28.     Human Resources Committee certification is not listed in the Grant Agreement as a Vesting Condition.

29.     Publishing first quarter results is not listed in the Grant Agreement as a Vesting Condition.

30.     Moreover, it is believed and therefore averred that Dentsply Sirona has provided Restricted Share Unit payouts to other employees who have terminated their employment with Dentsply Sirona prior to Human Resources Committee certification that Vesting Conditions were satisfied.

31.     Despite repeated demand, Dentsply Sirona has refused to provide Scarpato with the Restricted Share Unit payout she is entitled to receive.

## COUNT I
## BREACH OF CONTRACT

32.     Plaintiff hereby incorporates by reference all foregoing paragraphs as though set forth in full herein.

33.     Dentsply Sirona and Scarpato are parties to the binding and enforceable Grant Agreement.

7876412.1

**EXHIBIT A**

34.    Pursuant to the Grant Agreement, all Vesting Conditions were satisfied for the Restricted Share Unit payout owed to Scarpato.

35.    Accordingly, Scarpato's rights to the Restricted Share Unit payout vested on or before March 31, 2020.

36.    Scarpato did not forfeit any rights by resigning from her employment with Dentsply Sirona after March 31, 2020.

37.    Dentsply Sirona has breached the Grant Agreement by refusing to provide Scarpato with her vested payout.

38.    As a result, Scarpato has suffered damages equal to the value of the Restricted Share Unit payout, plus pre-judgment interest.

39.    Scarpato's damages exceed $50,000.

WHEREFORE Plaintiff Rachel H. Scarpato demands judgment in her favor and against Defendant Dentsply Sirona, Inc. in an amount equal to the value of the Restricted Share Unit payout, plus interest, costs, and such other relief as this Court deems proper.

## COUNT II
## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

40.    Plaintiff hereby incorporates by reference all foregoing paragraphs as though set forth in full herein.

41.    Scarpato is entitled to institute an action against Dentsply Sirona under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1, *et seq.* ("WPCL") to recover unpaid wages.

42.    At all relevant times, Dentsply Sirona was Scarpato's employer.

43.    Pursuant to the WPCL, wages include all earnings of an employee, regardless of whether determined by time, task, price, commission, or other method of calculation.

**EXHIBIT A**

44.   Wages under the WPCL include Scarpato's Restricted Share Unit payout.

45.   The wages due to Scarpato have remained unpaid for more than 30 days beyond the scheduled payday.

46.   As a result of Dentsply Sirona's failure to pay the wages owed to Scarpato, Scarpato is entitled to liquidated damages in an amount equal to 25% of the total of payments due.

47.   Pursuant to the WPCL, Scarpato is entitled to reasonable attorney's fees incurred in bringing this action, and a claim is hereby made therefor.

WHEREFORE Plaintiff Rachel H. Scarpato demands judgment in her favor and against Defendant Dentsply Sirona, Inc. in an amount equal to the value of the Restricted Share Unit payout, plus 25% liquidated damages, attorney's fees, interest, costs, and such other relief as this Court deems proper.

BARLEY SNYDER

By:_____
          Justin Tomevi
          Court I.D. 313661
          Lindsey M. Cook
          Court I.D. 323326
          100 East Market Street
          York, PA 17401
          Telephone: 717.846.8888
          Fax: 717-843-8492
          Attorneys for Plaintiff

7876412.1

**EXHIBIT A**

# EXHIBIT A

EXHIBIT A

**PERFORMANCE RESTRICTED SHARE UNIT GRANT NOTICE UNDER THE
DENTSPLY SIRONA INC.
2016 OMNIBUS INCENTIVE PLAN
as amended and restated**

## PERFORMANCE RESTRICTED SHARE UNIT GRANT AGREEMENT

This Performance Restricted Share Unit Grant Notice ("Notice" or "Grant Notice") is an agreement made and entered into as of the Grant Date below by and between DENTSPLY SIRONA Inc. and **RACHEL H SCARPATO** . The following award of Restricted Share Units (the "Award") has been granted, which entitles the Grantee to receive one share of the Common Shares, $0.01 par value per share, of DENTSPLY SIRONA Inc. ("Common Shares" or "Shares") for each Restricted Share Unit pursuant to the following terms and conditions:

- Grantee: **RACHEL H SCARPATO**

- Grant Date: **11/13/2018**

- Number of Restricted Share Units to be Awarded at 100% Payout Level (see table below in Vesting Schedule for range of potential Payout Levels): **3,405**

- Vesting Schedule: The performance period with respect to the attainment of the Operating Margin Targets set forth below shall begin on January 1, 2019 and shall continue through and including December 31, 2022 (the "Measurement Period"). Operating Margin is defined as the Company's (i) Adjusted Operating Income, divided by (ii) Adjusted Third Party Net Sales Excluding Precious Metals (or, the Third Party Net Sales if Third Party Net Sales Excluding Precious Metals is not available), as such amounts are shown in the Company's published quarterly or annual earnings reports and related investor materials. If (1) during any four consecutive quarters of the Measurement Period (each such set of quarters, the "Four Quarters"), the Operating Margin of the Company achieves the targets below:

| Operating Margin Targets | 18.0% | 19.0% | 20.0% | 21.0% | 22.0% | 23.0% |
|---|---|---|---|---|---|---|
| Payout Level | 50% | 100% | 150% | 200% | 250% | 300% |

and (2) such improvement of the Operating Margin, as measured at the end of the quarter immediately following such Four Quarters (even if such subsequent quarter is the quarter immediately following the Measurement Period) and calculated for the trailing four quarters, is also above the applicable target set forth in the table above (collectively, the "Vesting Conditions"), then the Award shall cliff vest at the payout levels described in the table above immediately upon the certification by the Human Resources Committee that such Vesting Conditions have been met. Further cliff vesting of the Award may occur at the incremental levels set forth in the table above as additional improvements in the Operating Margin are attained during the Measurement Period. For the avoidance of doubt, once Operating Margin Target at a target percentage is achieved, no further

**EXHIBIT A**

payments will be made for achieving the same or a lesser Operating Margin Target, and a greater Operating Margin Target must be achieved in order to achieve the Vesting Conditions for any subsequent period; provided, however, that only an incremental vesting of a portion of the Award would occur to achieve cumulative vesting at the level attained under the most recently attained Vesting Conditions. Notwithstanding anything herein to the contrary, any such vesting of the Award is subject to the Grantee's continued employment until the date any such Vesting Conditions are achieved, except as otherwise provided in the RSU Agreement and the Plan (each, as defined below).

- <u>Other Provisions</u>: The Award is granted subject to, and in accordance with, the terms of the Performance Restricted Share Unit Agreement (the "<u>RSU Agreement</u>") attached hereto as **Exhibit A** and the DENTSPLY SIRONA Inc. 2016 Omnibus Incentive Plan, as amended and restated from time to time (the "<u>Plan</u>"). Notwithstanding any provision to the contrary under this Agreement, the RSU Agreement, the Plan, or any Other Agreement (as defined below), the terms of this Agreement and the RSU Agreement shall supersede the terms of any Other Agreement to the extent any such Other Agreement would or may be interpreted to govern, affect, or otherwise relate to the vesting (or forfeiture) of this Award, and the terms of such Other Agreement shall be void and of no effect with respect to the vesting (or forfeiture) of this Award; provided, however, that if the Plan refers to the definition of Cause under such an Other Agreement, such definition of Cause shall continue to apply to the extent required under the Plan. For purposes of this Agreement, an "Other Agreement" shall mean any employment, severance, or retention agreement or arrangement or any other agreement or arrangement to which Grantee is a party or under which Grantee otherwise participates or benefits.

(Signature Page Follows)

**EXHIBIT A**

The Company and Grantee hereby agree to the Award and all terms and conditions of this Grant Notice, the RSU Agreement, and the Plan by their signatures below.

**If this Grant Notice is not executed by Grantee and returned by email to: Corporate-Equity-Administrator@dentsplysirona.com** (the "Corporate Equity Administrator") **by January 15, 2019, this Grant Notice, the Award, and the RSU Agreement shall be null and void without any compensation owing thereunder.** Upon receipt of the executed Grant Notice by the Corporate Equity Administrator, you will receive a confirmation of receipt to the Grantee.  This Award is granted under, and governed by, the terms and conditions of this Grant Notice, the Plan and the RSU Agreement, which are incorporated herein.

**DENTSPLY SIRONA INC.**

By: _____
       Name:
       Title:
       Date:

**GRANTEE**

_____
       Name:
       Date:

**Attachments**: **Exhibit A—Performance Restricted Share Unit Agreement**

**EXHIBIT A**

## EXHIBIT A

## PERFORMANCE RESTRICTED SHARE UNIT AGREEMENT

DENTSPLY SIRONA Inc., a Delaware corporation (the "Company"), has granted you (the "Grantee") an award of the number of Restricted Share Units as set forth on your Performance Restricted Share Unit Grant Notice (the "Grant Notice"), and you hereby agree to the terms and conditions of the Grant Notice and the terms and conditions herein. Each Restricted Share Unit shall entitle Grantee to receive one share of Common Shares upon vesting in the future in accordance with, and subject to, the terms and conditions set forth in the Notice and this Performance Restricted Share Unit Agreement (the "RSU Agreement").

The Award is granted pursuant to the DENTSPLY SIRONA Inc. 2016 Omnibus Incentive Plan, as amended and restated from time to time (the "Plan"), pursuant to which restricted share units, and other awards, may be granted to Eligible Recipients under the Plan. Except as otherwise specifically set forth herein, all capitalized terms utilized herein shall have the respective meanings ascribed to them in the Plan.

The details of your Award are as follows:

1. Grant of Restricted Share Unit Award. Pursuant to action of the Board and/or the Committee, the Company hereby grants to Grantee an Award of the number of Restricted Share Units as set forth on the Grant Notice. Each Restricted Share Unit shall entitle Grantee to receive one share of Common Shares upon vesting in the future in accordance with, and subject to, the terms and conditions described herein.

2. Vesting and Forfeiture.

(a) *Vesting.* The Restricted Share Units shall vest in one or more installments (each, an "Installment") in accordance with the Vesting Schedule as set forth on the Grant Notice, with the vesting of each Installment subject to the Grantee's continued employment with the Company or an Affiliate through the applicable vesting date and achievement of the Vesting Conditions set forth in the Grant Notice as of such vesting date, subject to such additional terms and conditions set forth on the Grant Notice and the terms hereof.

(b) *Accelerated Vesting.* Any Restricted Share Units which have not yet vested under subparagraph (a) above shall vest or be forfeited in accordance with the provisions of the Plan and the terms of this RSU Agreement.

(c) *Forfeiture of Restricted Share Units.* If Grantee's employment with the Company or an Affiliate terminates for any reason, including upon Retirement, Grantee shall forfeit all rights with respect to any portion of the Award (and the underlying shares of Common Shares) that has not yet vested as of the effective date of the termination, except to the extent provided below with respect to a termination by the Company without Cause. For the avoidance of doubt, except as provided in the Grant Notice, this RSU Agreement, or the Plan, if the Vesting Conditions are not achieved, Grantee shall forfeit all rights with respect to the Award (and the underlying shares of Common Shares) at the end of the Measurement Period to the extent such Vesting Conditions

were not achieved, if not sooner terminated and forfeited hereunder on account of termination of employment or otherwise.

(d) *Termination without Cause.* Notwithstanding anything herein to the contrary, if Grantee's employment with the Company or an Affiliate is involuntarily terminated by the Company without Cause during a portion of the Measurement Period during which applicable Vesting Conditions are achieved, Grantee shall receive a pro-rata portion of the incremental payout level applicable to such Vesting Conditions achieved, based on the period of time Grantee remained employed with the Company or its Affiliates during the applicable Four Quarters during which the Vesting Conditions were achieved. By way of example only, if Grantee is involuntarily terminated without Cause during month 7 of the 12-month period of the applicable Four Quarters and Vesting Conditions are ultimately achieved at the end of the quarter following the applicable Four Quarters, Grantee will receive 7/12ths of the amount that Grantee would otherwise have received had Grantee remained employed during the entire 12-month period and following quarter. For purposes of the foregoing, the month of termination shall count as one full month of employment. If Grantee is so involuntarily terminated without Cause during the quarter following the applicable Four Quarters, and the Vesting Conditions as determined at the end of such quarter following the applicable Four Quarters are achieved, Grantee shall be entitled to the full amount of the payment with respect to achievement of such Vesting Condition under this Award without regard to whether Grantee remained employed during the entire quarter following the applicable Four Quarters. If Grantee is involuntarily terminated by the Company without Cause either during an applicable Four Quarter period or during the quarter following such Four Quarters and becomes entitled to a payment on account of achieving Vesting Conditions with respect to such period, Grantee shall be entitled to one payment only on account of achieving Vesting Conditions for a period in which Grantee was involuntarily terminated and shall not become entitled to any subsequent payment even if Vesting Conditions are achieved again for a subsequent Four Quarter period that overlaps with the first Four Quarter period or the quarter following the first Four Quarter period in which Grantee was involuntarily terminated.

3. Issuance of Common Shares. In accordance with the Vesting Schedule and subject to all the terms and conditions set forth in this RSU Agreement and the Plan, upon conclusion of the quarter following an applicable Four Quarter period, but in no event later than thirty (30) days following such date, the Company shall issue and deliver to Grantee the number of shares of Common Shares equal to the number of Restricted Share Units which have become vested at the end of such period, as applicable (subject to any reductions for tax withholding or otherwise to the extent permitted under the Plan and this RSU Agreement). The Company may, in its sole discretion, deliver such shares of Common Shares (a) by issuing Grantee a certificate of Common Shares representing the appropriate number of shares, (b) through electronic delivery to a brokerage or similar securities-holding account in the name of Grantee, or (c) through such other commercially reasonable means available for the delivery of securities.

4. Incorporation of the Plan by Reference; Conflicting Terms. The Award of Restricted Share Units pursuant to this RSU Agreement is granted under, and expressly subject to, the terms and provisions of the Plan, which terms and provisions are incorporated herein by reference. Grantee

**EXHIBIT A**

hereby acknowledges receipt of a copy of the Plan and agrees to be bound by all the terms and provisions thereof. In the event of any conflict between the terms of the Plan and the terms of this RSU Agreement, the terms and provisions of the Plan shall govern.

5. <u>Non-Transferability of Restricted Share Units</u>. The Restricted Share Units may not be transferred in any manner and any purported transfer or assignment shall be null and void. Notwithstanding the foregoing, upon the death of Grantee, Grantee's beneficiary designated in accordance with the terms of the Plan shall have the right to receive any shares of Common Shares that may be deliverable hereunder, provided, that, for such purposes, the terms of the Plan and this RSU Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of Grantee.

6. <u>Ownership Rights</u>. The Restricted Share Units do not represent a current interest in any shares of Common Shares. Grantee shall have no voting or other ownership rights in the Company arising from the Award of Restricted Share Units under this RSU Agreement. Notwithstanding the foregoing, unless otherwise determined by the Committee or the Board, and to the extent permitted by the Plan, Grantee shall participate in any cash dividend declared by the Board applicable to shares of Common Shares, which shall entitle Grantee to receive a cash payment for each whole Restricted Share Unit, subject to the same Vesting Schedule and restrictions as the underlying Restricted Share Unit and otherwise payable at the same time shares are issued and delivered to Grantee with respect to the underlying Restricted Share Unit, in an amount that would otherwise be payable as dividends with respect to an equal number of shares of Common Shares.

7. <u>Committee Discretion</u>. This Award has been made pursuant to a determination made by the Board and/or Committee. Notwithstanding anything to the contrary herein, and subject to the limitations of the Plan, the Administrator shall have plenary authority to: (a) interpret any provision of this RSU Agreement or the Award; (b) make any determinations necessary or advisable for the administration of this RSU Agreement or the Award; (c) make adjustments as it deems appropriate to the aggregate number and type of securities available under this RSU Agreement to appropriately adjust for, and give effect to, any Change in Capitalization or otherwise as provided under the Plan; and (d) otherwise modify or amend any provision hereof, or otherwise with respect to the Award, in any manner that does not materially and adversely affect any right granted to Grantee by the express terms hereof, unless required as a matter of law, subject to the limitations stated in the Plan.

8. <u>Tax Withholding</u>. The Company shall withhold from Grantee's compensation any required taxes, including social security and Medicare taxes, and federal, state and local income tax, with respect to the income arising from the vesting or payment in respect of any Restricted Share Units under this RSU Agreement (or such other amount that will not cause adverse accounting consequences for the Company and is permitted under applicable withholding rules promulgated by the Internal Revenue Service or other applicable governmental entity).

9. <u>Clawback Policy</u>. To the extent this Award is subject to recovery under any law, government regulation, stock exchange listing requirement or Company agreement or policy, this Award will

**EXHIBIT A**

be subject to such deductions and clawback as may be required to be made pursuant to such law, government regulation or stock exchange listing requirement (or any agreement or policy adopted by the Company pursuant to any such law, government regulation, stock exchange listing requirement or otherwise).

10. Electronic Delivery. The Company may choose to deliver certain statutory or regulatory materials relating to the Plan in electronic form, including without limitation securities law disclosure materials. Without limiting the foregoing, by accepting this Award, Grantee hereby agrees that the Company may deliver the Plan prospectus and the Company's annual report to Grantee in an electronic format. If at any time Grantee would prefer to receive paper copies of any document delivered in electronic form, the Company will provide such paper copies upon written request to the Investor Relations department of the Company.

11. No Right to Continued Employment. Nothing in this RSU Agreement shall be deemed to create any limitation or restriction on such rights as the Company or an Affiliate otherwise would have to terminate the employment of Grantee at any time for any reason.

12. Entire Agreement. This RSU Agreement and the Plan contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations between the parties. For the avoidance of doubt, and notwithstanding any provision to the contrary, by signature on the Grant Notice and acceptance of this Award, Grantee agrees that the terms of this Agreement and the RSU Agreement shall supersede the terms of any Other Agreement to the extent any such Other Agreement would or may be interpreted to govern, affect, or otherwise relate to the vesting (or forfeiture) of this Award, and the terms of such Other Agreement shall be void and of no effect with respect to the vesting (or forfeiture) of this Award; provided, however, that if the Plan refers to the definition of Cause under such an Other Agreement, such definition of Cause shall continue to apply to the extent required under the Plan. For purposes of this Agreement, an "Other Agreement" shall mean any employment, severance, or retention agreement or arrangement or any other agreement or arrangement to which Grantee is a party or under which Grantee otherwise participates or benefits.

13. Governing Law. To the extent federal law does not otherwise control, this RSU Agreement shall be governed by the laws of Delaware, without giving effect to principles of conflicts of laws.

14. Compliance with Section 409A of the Internal Revenue Code. The Award is intended to comply with section 409A of the Code to the extent subject thereto, and shall be interpreted in accordance with section 409A of the Code and treasury regulations and other interpretive guidance issued thereunder, including without limitation any such regulations or other guidance that may be issued after the Grant Date. Notwithstanding any provision in the Plan or this RSU Agreement to the contrary, no payment or distribution under this RSU Agreement that constitutes an item of deferred compensation under section 409A of the Code and becomes payable by reason of Grantee's termination of employment or service with the Company shall be made to Grantee until and unless such termination of employment or service constitutes a

**EXHIBIT A**

separation from service within the meaning of section 409A of the Code. For purposes of this Award, each amount to be paid or benefit to be provided shall be construed as a separate identified payment for purposes of section 409A of the Code. Notwithstanding any provision in the Plan or this RSU Agreement to the contrary, and to the extent necessary to avoid the imposition of taxes under section 409A of the Code, (a) if Grantee is a specified employee within the meaning of section 409A of the Code, Grantee shall not be entitled to any payments upon a termination of employment or service until the expiration of the six (6)-month period measured from the date of Grantee's separation from service (or, if earlier, the date of death) and (b) no Change in Control shall be deemed to have occurred hereunder unless such Change in Control constitutes a change in control event for purposes of section 409A of the Code. Upon the expiration of the applicable waiting period set forth in the preceding sentence, all payments and benefits deferred pursuant to this Section (whether they would have otherwise been payable in a single lump sum or in installments in the absence of such deferral) shall be paid to Grantee in a lump sum as soon as practicable, but in no event later than sixty (60) calendar days, following such expired period, and any remaining payments due under this Award will be paid in accordance with the normal payment dates specified for them herein. Notwithstanding any provision of the Plan, this RSU Agreement or any Other Agreement to the contrary, in no event shall the Company or any Affiliate be liable to Grantee on account of an Award's failure to (i) qualify for favorable U.S. or foreign tax treatment or (ii) avoid adverse tax treatment under U.S. or foreign law, including, without limitation, section 409A of the Code.

IV29LID5

11/18/2018 04:12 PM U.S. Eastern Standard Time

ACCEPTED

**EXHIBIT A**

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the

Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that

require filing confidential information and documents differently than non-confidential

information and documents.


BARLEY SNYDER

By:_____

Justin Tomevi
Court I.D. 313661
Lindsey M. Cook
Court I.D. 323326
100 East Market Street
York, PA  17401
Telephone:  717.846.8888
Fax:  717-843-8492
Attorneys for Plaintiff

**EXHIBIT A**

<u>**VERIFICATION**</u>

I, Rachel H. Scarpato, verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

To the extent that any of the averments in the foregoing document are based upon an understanding or application of law, I have relied upon counsel in making this Verification.

This Verification is made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: 10/20/2020

Rachel H. Scarpato
Rachel H. Scarpato

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RACHEL H. SCARPATO,          )
                             )
            Plaintiff,       )
                             )
v.                           )     Case No.:
                             )
DENTSPLY SIRONA, INC.,       )
                             )
            Defendant.       )

I, Syed Rehan Ashraf, declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the contents of this

Declaration, and if called as a witness, I would testify as to its accuracy.

2.      I am SVP, Finance of Dentsply Sirona, Inc. ("Dentsply").

3.      As SVP, Finance of Dentsply, I am familiar with its corporate structure.

4.      Dentsply is a corporation incorporated in the State of Delaware.

5.      Dentsply's home office is located in Charlotte, North Carolina, where its high-level

officers direct, control, and coordinate Dentsply's activities.

6.      I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Jul 15, 2020_          by _____
                                         Syed Rehan Ashraf

1

HB: 4832-0285-0242.2

**EXHIBIT B**